UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ATLANTIC SPECIALTY
INSURANCE COMPANY,

    Plaintiff,

v.                              Case No: 2:18-cv-93-FtM-29CM

MERCIER MARINE ENTERPRISE,
LLC and BRUNSWICK
CORPORATION,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant Brunswick Corporation's Motion to Dismiss (Doc. #17) filed on March 30, 2018. Plaintiff filed a Response in Opposition (Doc. # 21) on April 23, 2018. For the reasons stated below, defendant Brunswick Corporation's Motion is granted in part and denied in part, and plaintiff is granted leave to file an amended complaint.

**I.**

According to the Complaint (Doc. #1): On unspecified dates defendant Brunswick Corporation, d/b/a Sea Ray Boats (Brunswick), manufactured a 2013 45-foot Sea Ray vessel (the Vessel) which it then sold to Joseph Campbell (Campbell). (Doc. #1, ¶¶ 1, 2.) Campbell obtained an insurance policy on the Vessel from Atlantic Speciality Insurance Co. (Atlantic Specialty) for the relevant time period. (Id. ¶ 14.)

On June 28, 2016, Campbell ran the Vessel aground while operating it in navigable waters off the coast of Naples, Florida. (Id. ¶¶ 3, 10, 11.) Campbell attempted to move the Vessel immediately following running aground, but was unable to do so because the Vessel's Zeus Pods (the Product) failed to sheer, causing the Vessel to sink. (Id. ¶¶ 4, 5.)

Defendant Mercier Marine Enterprise, LLC, d/b/a Sea Tow Naples (Sea Tow), responded to the sunken Vessel to conduct a salvage operation. (Id. ¶ 5.) Sea Tow used a gas-operated pump in order to keep the Vessel from taking on water. (Id. ¶ 7.) The pump leaked gas on or near the Vessel's exhaust, which caused the Vessel to catch fire. (Id. ¶ 8.) As the result of the damage caused by the fire, Atlantic Speciality paid Campbell $936,622.00 as the agreed upon value for the Vessel. (Id. ¶ 9.)

Atlantic Specialty filed a five-count Complaint in which it seeks, as the subrogee of Campbell, recovery of its damages. Atlantic Speciality asserts one claim against Sea Tow for gross negligence (Count I). Atlantic Specialty asserts four claims against Brunswick: Negligence (Count II), breach of express warranty (Count III), breach of implied warranty of merchantability (Count IV), and breach of implied warranty of fitness for a particular purpose (Count V).

Sea Tow filed an Answer (Doc. #15) and is not involved in the current motion. Brunswick moves to dismiss all counts against it,

asserting that (1) Plaintiff's negligence claim is barred by the economic loss rule; and (2) Plaintiff failed to state causes of action for breach of express and implied warranties because Plaintiff has not adequately pled privity. (Doc. #17.)

**II.**

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a Rule 12(b)(6) motion seeking to dismiss a complaint for failing to comply with Rule 8(a), the Court must accept as true all factual allegations in the complaint and "construe them in the light most favorable to the plaintiff." Baloco ex rel. Tapia v. Drummond Co., 640 F.3d 1338, 1345 (11th Cir. 2011). However, mere "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).

To avoid dismissal under Rule 12(b)(6), the complaint must contain sufficient factual allegations to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To do so requires "enough facts to state a claim to relief that is plausible on its face." Id. at 570. This plausibility pleading obligation demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted); see also

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." (citation omitted)). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## III.

**A. Subject Matter Jurisdiction**

The only basis for federal subject matter jurisdiction set forth in the Complaint is admiralty jurisdiction. The caption of the Complaint states that it is "IN ADMIRALTY," and the body of the Complaint states that it includes a maritime tort "that occurred on navigable water during a traditional maritime activity or activities that could or did impact maritime commerce." (Doc. #1, ¶ 10.) "With admiralty jurisdiction comes the application of substantive admiralty law." E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864 (1986). The Court, however, has "an independent duty to ensure admiralty jurisdiction exists before applying admiralty law." Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 900 (11th Cir. 2004).

**(1) Admiralty Jurisdiction Over the Count II Tort Claim**

In Count II, Plaintiff asserts a negligence/products liability claim against Brunswick for Brunswick's negligent construction of the Vessel. Specifically, Count II asserts that Brunswick owed Campbell (and his insurer) a duty to construct, design, formulate, install, prepare and assemble a safe Vessel; that Brunswick breached this duty by constructing, designing, formulating, installing, preparing and assembling the Vessel with defective Zeus Pods, which caused the Vessel to sink, require salvage, and ultimately catch fire; and that Atlantic Speciality sustained damages in the form of payments made to Campbell under its insurance policy and payments associated with investigating the salvage, fire, sinking and filing of the lawsuit. (Doc. #1, ¶¶ 30-32.)

"[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). The location test is satisfied if "the tort occurred on navigable water . . . ." Id. In determining whether a tort occurred on navigable waters, the Court looks to where the tort's harm manifested itself. E. River S.S. Corp., 476 U.S. at 863-64 (although defective turbines manufactured on land, location test

satisfied because injury "occurred while the ships were sailing on the high seas.")

The connection test has two prongs, both of which must be satisfied: (1) the incident at issue must have a potential to disrupt maritime commerce; and (2) the activity giving rise to the incident must have a substantial relationship to a traditional maritime activity. Jerome B. Grubart, 513 U.S. at 534. The Court "must assess the general features of the type of incident involved" to determine if it has a potentially disruptive impact on maritime commerce. Sisson v. Ruby, 497 U.S. 358, 363 (1990). "The correct inquiry is not whether there was an effect on maritime activity, but rather whether there potentially could have been." Alderman v. Pac. N. Victor, Inc., 95 F.3d 1061, 1064 (11th Cir. 1996). Under the second prong of the connection test, the Court must analyze "the general conduct from which the incident arose" to determine if the activity has a substantial connection to a traditional maritime activity. Sisson, 497 U.S. at 364.

The Complaint alleges that the Vessel's defective Zeus Pods malfunctioned and injured the Vessel while in navigable waters off the coast of Naples, Florida. The Court finds the location test is sufficiently pled. The Court also finds that the allegations regarding the operation of the Vessel in navigable waters and the sinking and burning of the Vessel sufficiently allege a potential to disrupt maritime commerce and that the activity had a

substantial relationship to a traditional maritime activity. Foremost Ins. Co. v. Richardson, 457 U.S. 668, 675 (1982). Accordingly, the tort claim as pled in Count II of the Complaint comes within the Court's admiralty jurisdiction.

**(2) Admiralty Jurisdiction Over the Warranty Claims**

The Complaint also asserts claims against Brunswick for breach of express warranty (Count III), breach of implied warranty of merchantability (Count IV), and breach of implied warranty of fitness for a particular purpose (Count V). The Court finds these claims do not come within the Court's admiralty jurisdiction.

It is well settled that a contract for the "sale of a vessel is not maritime in nature" and "does not invoke the maritime jurisdiction of the federal courts." Hatteras of Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848, 851-52 (11th Cir. 1988). Similarly, warranty claims arising out of a contract for the sale of a vessel are not subject to federal admiralty jurisdiction. E. River, 476 U.S. at 872, n. 7 (noting that the plaintiff's breach of warranty claims "would not be within the admiralty jurisdiction" of the federal courts).

In this case, Plaintiff's warranty claims appear to arise out of a contract for the sale of the Vessel to Campbell, and therefore do not fall under federal admiralty jurisdiction. However, because the Court has original subject matter jurisdiction over the tort claim in Count II, the Court has jurisdiction over the

warranty claims under 28 U.S.C. § 1367(a), at least if Count II is viable.

**B.    The Negligence Claim (Count II)**

As discussed above, Count II asserts that Brunswick owed Campbell a duty to construct, design, formulate, install, prepare and assemble a safe Vessel, breached that duty, and caused Atlantic Speciality damages in the form of payments made to Campbell under its insurance policy and payments associated with investigating the salvage, fire, sinking and filing of the lawsuit.  (Doc. #1, ¶¶ 30-32.)  Brunswick contends that Plaintiff's negligence claim should be dismissed because it is barred by the economic loss rule.  The Court agrees.

**(1)  Federal Maritime Law Applies**

As a preliminary matter, the Court first addresses whether state or federal law applies to this claim.  "Where a case arises in admiralty," federal maritime law applies.  Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc., 565 F.3d 1293, 1298 (11th Cir. 2009)(internal citation omitted).   However, "when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law."  Id. (internal citation and quotation omitted).

### (2) Negligence Claim Barred by Economic Loss Rule

"It is settled that the general maritime law imposes duties to avoid . . . negligence." Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 813 (2001). Federal maritime law recognizes negligence products liability principles. E. River, 476 U.S. at 865. In East River, the Supreme Court held that "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss." Id. at 876. The Court reasoned that a manufacturer has no duty to "prevent a product from injuring itself." Id. at 871.

In this case, Plaintiff seeks purely economic damages resulting from payments made to Campbell under the Vessel's insurance policy and the costs of investigating the claim and filing this lawsuit. Because federal maritime law does not permit recovery in tort for such purely economic loss, Plaintiff's negligence claim is barred.[1] The motion to dismiss Count II is granted. Because plaintiff may be able to allege the existence of compensable "other property," Saratoga Fishing Co. v. J.M.

---

[1] The parties incorrectly rely on Florida law as controlling whether the economic loss rule bars Plaintiff's negligence claim. However, even if Florida law applied, the result would nonetheless be the same. Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc., 110 So. 3d 399, 407 (Fla. 2013) (limiting Florida's economic loss rule to products liability cases).

Martinac & Co., 520 U.S. 875 (1997), dismissal is without prejudice to filing an amended complaint.

## C. Breach of Express Warranty Claim (Count III)[2]

Count III asserts a breach of express warranty claim against Brunswick. Specifically, it asserts that Brunswick "issued an express warranty to Campbell" that the Vessel was free of defects, but breached its express warranty by negligently constructing the Vessel with a defective Product. (Doc. #1, ¶¶ 33, 35.) Brunswick argues Count III should be dismissed because Plaintiff failed to allege privity between Brunswick and Campbell. While the allegations are humble, the Court finds they are sufficient.

The Court agrees with defendant that Florida law requires privity to establish this claim, and therefore privity must be plausibly pled in the complaint. "Florida law reveals no clear rule about whether privity is required in every Florida express warranty claim." Godelia v. Doe 1, 881 F.3d 1309, 1321 (11th Cir. 2018). As a general principle, however, Florida law requires privity in an action for breach of express warranty. See Intergraph Corp. v. Stearman, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties.");

---

[2] Because Count III does not fall within the Court's admiralty jurisdiction, as discussed *supra*, the Court applies Florida law to it.

see also Weiss v. Johansen, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005)(noting that "in order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant").

Additionally, Florida courts have recognized a relaxed privity requirement in express warranty claims where a manufacturer makes direct representations to a purchaser. See Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of Am., Inc., 444 So. 2d 1068, 1071 (Fla. 3d DCA 1984). In Cedars, a hospital purchased a manufacturer's medical equipment through a third-party dealer. Id. at 1072. The court found privity existed between the hospital and manufacturer because, although the hospital did not purchase the equipment directly from the manufacturer, the manufacturer made direct representations regarding the equipment's quality to the hospital prior to purchase from the dealer. Id. The court noted that without the direct contacts from the manufacturer to the hospital, there would have been no privity "and thus no liability for breach of warranties . . . ." Id. at 1072 n. 4.

In this case, the Court finds Plaintiff has adequately alleged privity between Campbell and Brunswick.[3] Plaintiff alleges that Campbell purchased the Vessel from Brunswick (Doc. #1, ¶2) and that Brunswick "issued an express warranty to Campbell." (Id. ¶ 33.) Accordingly, the Court finds Plaintiff has adequately alleged the required privity. The motion to dismiss Count III is therefore denied.

D. **The Breach of Implied Warranty Claims (Counts IV and V)[4]**

Count IV asserts a claim for breach of implied warranty of merchantability, and Count V asserts a claim for breach of implied warranty of fitness for a particular purpose. Brunswick argues these claims should be dismissed because Plaintiff has failed to allege privity. The Court disagrees.

The Court agrees with Brunswick that under Florida law, privity is required in a claim for breach of an implied warranty. Kramer v. Piper Aircraft Corp., 520 So. 2d 37, 39 (Fla. 1988); see also Mesa v. BMW of N. Am., LLC, 904 So. 2d 450, 458 (Fla. 3d DCA 2005) ("Under Florida law, a plaintiff cannot recover economic

---

[3] Plaintiff appears to argue that privity is necessarily established here because it has brought this action as subrogee of Campbell. The required privity is between Brunswick and Campbell. As subrogee, Plaintiff is subject to any defenses available against Campbell. Allstate Ins. Co. v. Metro. Dade Cty., 436 So. 2d 976, 978 (Fla. 3d DCA 1983).

[4] Because Counts IV and V do not fall within the Court's original subject matter jurisdiction as discussed *supra*, the Court applies Florida law.

losses for breach of implied warranty in the absence of privity."). As discussed above, Plaintiff has sufficiently alleged privity between Campbell and Brunswick to satisfy its pleading burden.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant Brunswick's Motion to Dismiss (Doc. #17) is **GRANTED IN PART AND DENIED IN PART as follows:**

1. The motion is granted as to Count II, which is dismissed without prejudice.

2. The motion is denied as to Counts III, IV, and V.[5]

3. Plaintiff may file an amended complaint within thirty (30) days of the date of this Opinion and Order.

**DONE and ORDERED** at Fort Myers, Florida, this 23rd day of May, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

[5] Without a viable Count II, the Court would anticipate dismissing Counts III-V. That matter, however, is premature in light of a potential for amendment.